**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**RUSSELL GRAY** **Plaintiff**

**v.** **Case No. 4:24CV527 JM**

**CITY OF HEBER SPRINGS;**
**CHIEF BRIAN HAILE, in his official and individual capacities; CHRISTOPHER GRACEY, in his official and individual capacities; DEVIN TAYLOR, in his official and individual capacities** **Defendants**

**ORDER**

Pending is the motion for summary judgment filed by the Defendants, City of Heber Springs, Chief Brian Haile, Christopher Gracey and Devin Taylor. (Docket # 20). Plaintiff has filed a response and Defendants have filed a reply. For the reasons set forth herein, the motion is GRANTED IN PART AND DENIED IN PART.

Plaintiff, Russell Gray ("Gray"), filed his first Amended Complaint on July 30, 2024, alleging under 42 U.S.C. §1983 and state law that Gray's constitutional and state law rights were violated in an incident involving the defendants that occurred on October 12, 2023. Gray argues that Defendants subjected him to an arrest without probable cause and excessive use of force pursuant to the Fourth, Fifth, Sixth, Seventh, Eighth and Fourteenth Amendments of the United States Constitution. In addition, Gray claims that the Defendants' actions violated the equal protection provisions of the Fourteenth Amendment. Gray also brings claims for these alleged constitutional violations pursuant to the Arkansas Civil Rights Act. Finally, Gray claims that Defendants committed the Arkansas state law torts of outrage and false arrest in their detention of him.

Defendants argue that they are entitled to qualified immunity and summary judgment. In response to Defendants' motion for summary judgment, Plaintiff concedes the dismissal of his

claims under the Sixth, Seventh and Eighth Amendments as well as his equal protection claims. Gray also agrees that Defendants are entitled to summary judgment on their claims against the City of Heber Springs. Because the official capacity claims against Defendants Haile, Gracey and Taylor are equivalent to a suit against the employing governmental entity, those claims are also dismissed with prejudice. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

## Standard of Review

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*,"[to] point out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute

> exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

Facts

Gray is an agent for the Arkansas Tobacco Control Office, operating under the Federal Food and Drug Administration. On the morning of October 12, 2023, Gray attempted to conduct a regular inspection at the Murphy Oil USA gas station in Heber Springs, Arkansas. Gray was wearing his official uniform, which included his FDA badge and visible holstered weapon. Gray was told by the gas station employees that he could not go behind the counter to inspect the tobacco unless he complied with a company policy and signed a logbook. Gray refused to sign the logbook and advised the employee that they would fail the inspection if he was not permitted to go behind the counter to inspect. The employee refused to allow Gray to go behind the counter without complying with the company policy and then placed a call to her corporate office. Gray then exited the station. The corporate office allegedly advised the gas station employee to call local law enforcement to verify the man's identity. Gray returned to his vehicle and began his paperwork regarding the inspection.

Based on the audio recordings and Gracey's body cam footage the following events occurred: The manager of the gas station called the Heber Springs Police Department and advised that a man in a grey Nissan came into the store, identified himself as law enforcement

and demanded to check the tobacco behind the counter. She advised that she needed to have an officer see "who he is and why he's at the station." She also advised that he had been to the store before and had come behind the counter to check the tobacco. Dispatch then contacted Gracey and advised him of the call. Dispatch advised Gracey that Gray had identified himself as law enforcement and demanded to check the tobacco behind the counter. Gracey was also advised that Gray was carrying a weapon.

When Gracey arrived at the scene he stopped his patrol unit in front of Gray's parked vehicle. Gray was inside the vehicle and the windows were rolled up. Gracey stood at the front of Gray's vehicle and twice ordered Gray to put his hands up. There is no indication that Gray heard the orders and Gracey did not raise his voice when making the commands. Gray denies hearing these commands. On the third command Gracey yells and pulls his gun, telling Gray to exit the vehicle with his hands up. Gray was placed in handcuffs at approximately 10:32. Gray's badge was visible on his waist band, he identified himself verbally as law enforcement and his identification which demonstrates that he is an agent with the Arkansas Tobacco Control Office was taken from him. Gray remained handcuffed until approximately 10:42.

After Gray was handcuffed Gracey went into the store to view video footage of the incident involving Gray prior to his arrival. Gracey claims that at that time he was unaware of the truth of Gray's identity. However, when leaving the store, Gracey is heard saying, "All I know is that I pulled a gun on a Federal Agent today, so that's great." Thereafter Gracy was advised that Gray's identity had been verified and he was told to remove Gray's handcuffs. Once the handcuffs were removed and Gray's firearm was returned, Gracey continued to be aggressive telling Gray that he had to follow the gas station policy and sign the logbook if he wanted to view the video footage or go behind the counter. Gray advised that he would not sign

the book and Gracey screamed "then you're going to get out of here." As Gray attempted to explain his position and Gracey said "I ought to arrest you."

Discussion

Defendants ask the Court to dismiss Plaintiff's claims against them in their individual capacities based on qualified immunity. Qualified immunity shields a government official from liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). " 'A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' " *Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020) (internal citation omitted). In considering whether a right is clearly established, courts do not look at precedent "at a high level of generality." *Id*. Instead, courts "look for a controlling case or a robust consensus of cases of persuasive authority. There need

not be a prior case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.' " *Id.* (internal citation omitted). A defendant is entitled to qualified immunity only if no reasonable fact finder could answer both questions—whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right and whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful—in the affirmative. *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).

Gray's claims of false arrest and excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 393 (1989). Defendants claim that Gracey had reasonable suspicion to support the initial investigatory stop of Gray and probable cause to arrest Gray.[1] The Fourth Amendment applies to seizures of the person, including brief investigatory stops such as the stop of the vehicle. The investigatory stop "must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981). "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7(1989). With respect to arrests, "[a] warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least "arguable probable cause." *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011).

---

[1] The Court must analyze the allegations of qualified immunity as to each individual Defendant. The factual allegations against Separate Defendant Taylor were not sufficient to overcome the qualified immunity analysis. Gray failed to present specific facts related to Taylor's conduct that violated a clearly established constitutional right. Accordingly, the Defendants' motion for summary judgment is GRANTED as to Separate Defendant Taylor.

Defendants argue that upon initial contact with Gray, Gracy had reasonable suspicion and or probable cause to believe that Gray either had or had attempted to commit Criminal Trespass and ultimately probable cause to arrest Gray for obstructing governmental operations.

In Arkansas the statute defining Criminal Trespass specifically states:

> (d) This section does not apply to the following persons who are acting in the line of duty or within the scope of their employment:
>
> (1) A law enforcement officer;
> . . .
> (5) *An employee of a federal, state, or local agency*, commission, board, political subdivision, school district, or municipality *who has entered onto or remains on the premises for a purpose directly relating to the employee's employment with the federal, state, or local agency*, commission, board, political subdivision, school district, or municipality.

Ark. Code Ann. § 5-39-203. Gracey was notified by dispatch that Gray had identified himself as law enforcement and attempted to go behind the counter to inspect the tobacco products. When Gray was told he could not go behind the counter without signing the logbook, Gray left the store. Gracey was informed that Gray was no longer in the store and was in his car. Based on these facts, it would have been unreasonable for Gracey to believe that Gray, who identified himself as law enforcement, wore a visible badge, gun and uniform was committing the crime of criminal trespass. Under these facts, Gracey could not have had "reasonable suspicion" that Gray had either attempted to commit or had committed criminal trespass.

Gracey argues that he "reasonably believed that Mr. Gray was committing the offense of Obstructing Governmental Operations" when he instructed Gray to "put his hands up" and Gray failed to immediately comply. He argues that he had probable cause to support Gray's arrest for Obstructing Governmental Operations. *See* Ark. Code. § 5-54-102. "Probable cause exists "when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.' "

*Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011) (quoting *Fisher v. Wal–Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)). Under Arkansas law, a person commits obstruction when he "[k]nowingly obstructs, impairs, or hinders the performance of any governmental function." Ark. Code Ann. § 5-54-102(a)(1). Viewing the evidence in the light most favorable to Gray, Gracey had neither actual or arguable probable cause for Gray's arrest. Gracey ordered Gray to exit his vehicle in a normal tone of voice two times while standing in front of Gray's vehicle. Gray was sitting in his car with the windows rolled up and claims that he did not hear Gracey's commands. The video does not indicate that Gray heard or acknowledged Gracy's orders until Gracey yelled and drew his service weapon. There is no evidence that Gray *knowingly* obstructed, impaired or hindered the performance of any governmental function. Even if Gray's noncompliance was interpreted as resisting arrest the refusal to submit to arrest does not constitute obstruction of governmental operations. *See* Ark.Code Ann. § 5–54–102(c)(2) ("This section does not apply to: . . . [r]efusal to submit to arrest).

Defendants argue that Gracey's pointing a firearm and Gray did not rise to the level of excessive force. "[W]hen officers are presented with serious danger in the course of carrying out an investigative detention, they may brandish weapons or even constrain the suspect with handcuffs in order to control the scene and protect their safety." *United States v. Fisher*, 364 F.3d 970, 973 (8th Cir. 2004). *See United States v. Navarrete–Barron,* 192 F.3d 786, 789–91 (8th Cir.1999) (officers did not exceed limits of *Terry* stop by drawing weapons and handcuffing drug trafficking suspect who may have been armed); *United States v. Lloyd,* 36 F.3d 761, 762–63 (8th Cir.1994) (brandishing gun and ordering suspect to raise hands did not transform *Terry* stop to an arrest where police were looking for men who had just threatened complainant with firearms); *United States v. Danielson,* 728 F.2d 1143, 1146–47 (8th Cir.1984) (officers did not

exceed bounds of investigative detention by approaching suspects in armed bank robbery with weapons drawn). In contrast, here there is no evidence to support a finding that Gracey was presented with serious danger when he approached Gray. Gray had not committed a serious felony or threatened anyone with his firearm. There is no evidence that Gray presented a serious danger to Gracey. Moreover, in determining whether the use of deadly force was reasonable, the Court notes that "an individual's mere possession of a firearm is not enough for an officer to have probable cause to believe that individual poses an immediate threat of death or serious bodily injury . . . ." *Cole Est. of Richards v. Hutchins*, 959 F.3d 1127, 1132 (8th Cir. 2020).

For these reasons, Defendant Gracey is not entitled to qualified immunity on Gray's claims of false arrest or excessive force. Accordingly, Gray's claims under the Arkansas Civil Rights Act also survive. Additionally, Gray's state law intentional tort claims survive. Finally, the Court finds that Gray has failed to offer evidence to support his claim against Chief Haile for failure to train or supervise. There is no evidence that there was a pattern of unconstitutional acts committed by Gracey to which Haile was deliberately indifferent. Accordingly, the claims against Haile in his individual capacity are dismissed.

<u>Conclusion</u>

Wherefore, Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART as set forth herein.

IT IS SO ORDERED this 28th day of July, 2026.

James M. Moody Jr.
United States District Judge